1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney

2

3  MARTHA BOERSCH (CABN 126569)
   Chief, Criminal Division

4  JONAH P. ROSS (CABN 305076)
   Assistant United States Attorney

5

6     1301 Clay Street, Suite 340S
      Oakland, CA 94612
      Telephone: (510) 637-3680

7     Fax: (510) 637-3724
      E-Mail: jonah.ross@usdoj.gov

8

9  Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CASE NO. 24-CR-00225-HSG** |
| Plaintiff, | **UNITED STATES' DETENTION MEMORANDUM** |
| v. | Hearing Date: May 9, 2024 |
| MICHAEL LEE PATTERSON, | Time: 10:30 a.m. |
| Defendant. | Judge: Hon. Donna M. Ryu |

GOVERNMENT DETENTION MEMO
24-CR-00225-HSG

I.  **INTRODUCTION**

Defendant Michael Lee Patterson has been indicted on one count of receipt of child pornography (18 U.S.C. § 2252(a)(2) and (b)) and one count of possession of an unregistered short-barreled rifle (26 U.S.C. § 5861(d)).  For the same and related conduct, in Contra Costa County he is charged with 14 counts, including attempted lewd act upon a child, carrying a loaded firearm in a vehicle, possession of an assault weapon (eight separate counts), possession of over 600 images of child or youth pornography, and child abuse.  Since being charged in Contra Costa County, Patterson has been in custody, held on $1.125 million bail.

Patterson's sexual fixation on very young girls (including a specific child within his extended family), his willingness to act on this fixation, and his stockpiling of assault weapons, leave no doubt that Patterson poses a serious danger to the community.  Further, given the gravity of the charges he faces and his uncertain remaining ties to the community, Patterson presents a flight risk.  It is imperative that he remain detained pending trial.

II.  **BACKGROUND**

   a.  **Patterson Attempted to Meet (What He Believed Was) a 13-Year-Old Girl to Perform Sexual Acts on Her; Patterson Carried a Loaded Revolver Under His Driver's Seat**

On May 31, 2023, 42-year-old Michael Lee Patterson of Brentwood, California, used the mobile messaging application Kik to initiate a text chat with another Kik user, whom he thought was a 13-year-old girl with the screen name "fluffybunny123xoxo."  Unbeknownst to Patterson, the person he was communicating with was in fact an undercover deputy from the Contra Costa Sheriff's Office who was using the screen name "fluffybunny123xoxo" and the first name "Chelsea" as part of an undercover operation conducted by the Silicon Valley Internet Crimes Against Children Task Force.  The purpose of the operation was to identify and apprehend adults who participated in sexual conversations with undercover chatters posing as minors online and later attempted to meet in-person with the minors to engage in sexual acts.

At the outset of their conversation, "Chelsea" almost immediately confirmed that she was a 13-year-old girl—which "Chelsea" stated multiple times throughout their conversation. Patterson lied and

stated that he was 23 years old. Patterson steered the conversation toward sexual topics, stating that he was going to masturbate, and then asking "Chelsea" if she wanted to "play…with your pussy" and if "Chelsea" had had sex with older people. Patterson eventually provided "Chelsea" with his cell phone number and asked "Chelsea" to text him.

The conversation continued via text message, and "Chelsea" again confirmed that she was 13 years old. Patterson repeatedly asked "Chelsea" to send a photograph of herself, and "Chelsea" eventually sent two photographs of what appeared to be a girl of about 13 years of age. Each time, Patterson responded by commenting on "Chelsea's" attractiveness, writing, "omg you're gorgeous," and, "So pretty. Love your eyes." Patterson also sent two photographs of himself, including a photograph of his nude body from the chest to the pubic area, and another of his face.

Patterson proposed that the two meet in person. When asked why he would want to meet, Patterson responded, "To just hang out. Unless you wanted to hook up[.]" Asked what he would want to do if they "hook up," Patterson responded, "Totally up to you[.] What were you thinking[?] Id (sic) kiss every inch of you!" Patterson became more descriptive, and eventually stated, "You wanna be kissed all over your body? Would love to kiss u (sic)(.)… Lick you (sic) pussy." After "Chelsea" showed interest, Patterson proposed that they meet, stating, "Whenever you're ready to… Want me to come to you[?]" Patterson again confirmed his intention to perform oral sex on "Chelsea." After "Chelsea" provided an address where he could pick her up, Patterson stated that she could come to his grey SUV (which he had previously stated was a Mercedes) with tinted windows and that he would perform oral sex on her in the back. Patterson asked "Chelsea" to walk to a nearby gas station.

At the gas station, officers located Patterson (whom they recognized from the photograph of his face he had sent to "Chelsea") in the driver's seat of a grey Mercedes SUV. In the SUV, they located two smart phones, including the phone Patterson had used to send text messages to "Chelsea." And next to the phone, which was under the driver's seat, officers located a loaded .38 caliber revolver. (Patterson later acknowledged that the revolver was his, but he said that he had forgotten it was in the car.)

### b. Patterson Admitted Possessing Child Pornography; His Devices Contained Hundreds of Videos and Over 1,000 Images of Child Pornography

Patterson was transported to the police station, where he was read his *Miranda* rights, which he acknowledged. Patterson admitted that he had engaged via Kik in a conversation with a 13-year-old girl. (Patterson appeared to still believe that he had, in fact, been communicating with an actual 13-year-old girl.) The officers asked if the phones found in Patterson's SUV contained child pornography. After some hesitation, Patterson acknowledged that at least one of the phones contained images of child pornography and estimated that the girls in the images were as young as five years old. He stated that he knew they were not 18 based on how they looked.

Patterson stated that he had received all the images of child pornography via Kik, where people post images to groups. He stated that he had viewed and downloaded child pornography since he first created a Kik account more than five years earlier, and that he used to masturbate to the images.

After a state court judge issued a search warrant permitting officers to search for (among other things) additional evidence of possession of child pornography and unlawful possession of firearms, officers seized 42 electronic devices from Patterson's residence, which he shared with his wife and 13-year-old son. One of these devices included an LG smart phone on which the Kik application had been installed. On this phone, agents later found the Kik conversation with "Chelsea."

Pursuant to a federal search warrant, agents with the United States Secret Service searched the devices for evidence of (among other things) possession of child pornography. Across the devices, many of which were located in Patterson's locked gun safe, the agents located over 650 videos and over 1,200 individual images containing child sexual abuse material, most of which depicted prepubescent children or children under the age of 12. Of those, 68 videos and 240 individual images depicted toddlers or infants, and 18 videos and 14 individual images depicted sadistic or masochistic conduct, such as one video depicting a screaming and crying infant held upside down over a toilet while a female urinates on the infant's face. In the same video, a large pitcher of water is then poured over the still upside-down infant's face while the infant struggles to breath. Other files depicted prepubescent children bound, handcuffed, or displaying emotional distress while engaged in sexual acts.

In the same gun safe found in Patterson's garage, officers located a girl's bathing suit top,

photographs of two young girls, various sex toys, and a silicone doll head of a child, designed to be used as a masturbatory tool.

### c. Patterson Possessed Manipulated Images Depicting a Minor Family Member Engaged in Sexual Acts

On one of the phone's seized from Patterson's SUV, investigators found 16 pornographic images in which a child's face (the same child in each image) had been superimposed onto the body of a female engaged in sexual acts. Through further investigation, local law enforcement determined that the child was a member of Patterson's extended family. One such image contained an explicit caption in which the female refers to "Mike."  (Further investigation indicated that Patterson had not harmed this girl.) The original image of the girl was located on the same device. On that same device, the Bluetooth device name is "Mike's Galaxy S9."

### d. Patterson Possessed Dozens of Firearms—Including Firearms He Illegal Possessed Under Federal and State Law—Boxes of Ammunition, and Gun Manufacturing Equipment

During his post-*Miranda* interview with investigators, Patterson acknowledged owning a few guns and that he was a "gun guy." Upon entering Patterson's residence to execute the search warrant, investigators observed guns, gun components, and ammunition scattered all over the house, some locked in gun safes and many left unsecured. Investigators seized dozens of firearms, firearm components, boxes of ammunition, and firearm manufacturing machines and components, including products from the company Polymer80, Inc. (a leading manufacturer of kits containing firearm parts, including unfinished firearm receivers used for at-home manufacturing of privately made firearms such as pistols and AR-15s), and a computerized gun milling machine (used to engrave, customize, and finish 80 percent lowers, such as the ones produced by Polymer80, Inc. to create complete, functional firearms). Many of the firearms appeared to have been custom-made, including a skeletonized logo that Patterson created. At least eight of the firearms found qualified as illegal assault weapons under California state law. Further, three of the firearms qualified as a short-barreled rifle and one was a fully automatic machine gun. In violation of federal law requiring registration of short-barreled rifles and machine guns in the National Firearms Registration and Transfer Record, Patterson had not registered his.

The following photograph depicts only a small portion of the firearms and ammunition located in Patterson's home.



### III. LEGAL STANDARD

Under the Bail Reform Act of 1984, as amended, the Court must detain a defendant pretrial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary for the government to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as

whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

### IV. PATTERSON'S SEXUAL FIXATION ON YOUNG GIRLS, HIS WILLINGNESS TO ACT ON THIS FIXATION, AND HIS STOCKPILING OF FIREARMS PROVES THAT HE IS A DANGER TO THE COMMUNITY AND A FLIGHT RISK

The United States submits that no condition or combination of conditions will protect the public or assure Patterson's appearance at these proceedings should he be released from custody.

#### a. The Nature and Circumstances of the Offense Weigh in Favor of Detention

Patterson's conduct—including his attempt to meet a 13-year-old girl to perform oral sex on her (while he had a loaded gun in the car), his possession of thousands of videos and images of disturbing child pornography, his fixation on a young female family member, and his stockpiling of firearms—makes clear the danger he poses to the community. Further, Patterson acknowledged that he had been downloading child pornography for over five years, proving that, while had not previously been caught, his criminal conduct was not isolated—it had continued for many years. And despite knowing that his fixation on young girls and his possession of child pornography were wrong—as evidenced by his apparent efforts to keep them secret from his wife and son—Patterson could not quell his urge to act on his impulses.

The nature and circumstances of the offense indicate that, if released from custody, Patterson would continue to pose a distinct danger to young girls in the community.

#### b. Nature and Seriousness of the Danger to the Community

Patterson poses a particularly serious danger to the community, given the two types of items he appears to collect: child pornography and guns. Given his conduct, which includes not only attempting to meet an underage girl to perform sexual acts on her but also bringing a loaded gun to that meeting, there is reason to believe that Patterson's release could have dire consequences.

#### c. The Weight of the Evidence Against Patterson Is Overwhelming

The evidence against Patterson is overwhelming. He admitted to officers that he had intended to meet the 13-year-old girl to perform oral sex on her and that he possessed child pornography (which was

later corroborated by the search of his devices). And his possession of the many firearms found in his home is corroborated by various receipts, emails, text messages, and other indicia proving the guns were his.

### d. Patterson's Long History of Downloading Child Pornography and His Uncertain Community Ties Demonstrate the Danger and Flight Risk He Poses

Although Patterson does not have prior arrests or convictions, that is only because he was not caught sooner. Patterson admitted to officers that he had been downloading child pornography for the entire time he had the mobile application Kik, which was more than five years. His conduct in the instant case was no isolated incident; it was part of a long pattern of conduct.

Not only does Patterson present a serious risk to the community, but he is also a flight risk. It is unclear what, if any, community ties remain for Patterson. Now, he faces federal prosecution, and the prospect of a federal conviction and years in a federal prison provide Patterson with significant motivation to escape accountability. The government is aware of no viable place to which Patterson can be safely released.

## V. CONCLUSION

For the reasons set forth above, the defendant is a danger to the community and a flight risk. The Court should therefore detain the defendant pending trial.

DATED: May 8, 2024                          Respectfully submitted,

                                            ISMAIL J. RAMSEY
                                            United States Attorney

                                             */s/ Jonah P. Ross*
                                            JONAH P. ROSS
                                            Assistant United States Attorney