Bird & Van Dyke, Inc.
A Professional Law Corporation
David S. Van Dyke, CABN 154402
Mary Ann F. Bird, CABN 206770
3522 Deer Park Drive, Suite A
Stockton, CA 95219
Telephone    209.414.3266
Facsimile    209.414.3268

Attorneys for Defendant MICHAEL LEE PATTERSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL LEE PATTERSON,<br><br>Defendant. | Case No.: 4:24 CR 00225 HSG<br><br>DEFENDANT'S SENTENCING MEMORANDUM<br><br>DATE: SEPTEMBER 17, 2025<br>TIME: 2:00 P.M.<br>COURT: HONORABLE JUDGE HAYWOOD S. GILLIAM |

Comes now Defendant MICHAEL LEE PATTERSON who submits the following sentencing memorandum in support of his request for downward variance and adjustment for a sentence 84 months on Counts 1 and 2 concurrent, five years of supervised release, waiver of fines, and for designation to a federal penal facility closest to Alameda County based upon the following factors:

1. §5H1.3 - Defendant is a victim of childhood sexual abuse

2. §4C1.1 - Adjustment for Certain Zero-Point Offenders

3. §2G2.2(b)(6) - Length of video

4. 18 USC §3585(b) : Defendant has prior custody credits for an offense that is relevant conduct to the instant offense

### Statement of Facts

Mr. Michael Lee Patterson adopts the factual statement set forth in Item 2 the Plea Agreement. [Document 42 CMECF]

### Legal Discussion

Prior to the Supreme Court's decision in *United States v. Booker* (2005) 543 U.S. 220, a district court could depart from the sentence determined under the applicable sentencing guidelines only if the court found that there existed "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. §3553(b)(1)(2000 ed.). Section 3553(b)(1) was the statutory basis for the Sentencing Commission's guidelines and policies that similarly allowed departures only under exceptional circumstances of a kind, or to a degree, that had not adequately been taken into consideration by the Sentencing Commission. See USSG §5K2.0, comment. (n.2) ("This policy statement covers departures from the applicable guideline range based on offense characteristics or offender characteristics of a kind, or to a degree, not adequately taken into consideration in determining the range."); *Booker* invalidated Section 3553(b)(1), which accordingly made the Sentencing Guidelines advisory rather mandatory.

The Supreme Court's decision in *Gall v. United States* (2007) 128 S.Ct. 586, 595, gave courts additional instruction about the imposition of a sentence outside the sentencing guidelines.

The Court said extraordinary circumstances are not necessary to justify a sentence outside the guidelines range.

The Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2), which are "the need for the sentence imposed -

(a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(b) To afford adequate deterrence to the criminal conduct;

(c) To protect the public from further crimes of the defendant; and

(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

18 U.S.C. § 3552(a)(2).

In "determining the particular sentence to be imposed," the Court must consider these purposes, the nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid unwarranted disparities, and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1)-(7).

Section 3553(a)(2)(A) requires judges to consider "the need for the sentence imposed … to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense." *Gall v. US, supra*, 552 U.S. 38, 53.

Thus, Defendant Michael Lee Patterson makes his motion for downward variance and adjustment under 18 U.S.C. §3553(a) because a sentence of 84 months and intensive supervised release is "sufficient, but not greater than necessary" to achieve the sentencing objectives of 18 U.S.C. §3553(a) and will meet the ends of justice.

**Factor 1: §5H1.3 Mental and Emotional Conditions  - Defendant is a victim of childhood sexual trauma**

The Court can consider the defendant's history of sexual abuse in its sentencing decision at USSG §5H1.3. Mental and Emotional Conditions (Policy Statement). Here it states, "Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."

Mr. Patterson in no way disputes the conduct for which he has pled guilty. His poor choices have cost him and his family in ways from which he cannot recover. Nevertheless, Mr. Patterson has had his own childhood traumas which have never been addressed. His sexual childhood trauma has, to a significant extent, brought him to where he is now before this Court.

Mr. Patterson was sexually abused by a neighborhood couple during the ages of seven until eleven years old. Also, a 19 year old sexually abused him as well, all of which was related to the Court on pages 25 and 26, Mental and Emotional Health in the Presentence Report.

Additionally, Dr. Jeremy Coles, PhD, on page 26, paragraph 112 in the Presentence Report states, "A review of the known facts in this case do not suggest that Mr. Patterson is suffering with a Pedophilic Disorder." Regarding the CSAM, Dr. Coles opined, "This…points to some unresolved deviant trends in his sexual make-up, likely related to his own molestation." He concludes by stating he "believes Mr. Patterson has a low risk of sexual re-offense." Dr. Coles concludes, "It is my unequivocal opinion that Mr. Patterson can be safely and effectively treated in the community."

Mr. Patterson has stated on several occasions that he is amenable to treatment and looks forward to starting counseling to avoid this situation in the future. According to Dr. Cole, Mr. Patterson is a low risk for re-offending.

### Factor 2 - §4C1.1 Adjustment for Certain Zero-Point Offenders

Since Mr. Patterson has been convicted of this type of offense, he will not earn time credits (FTC) under the First Step Act (FSA). Even though he will not be eligible to earn time credits for program completion and therefore not gain time off his sentence, he is not excluded from participating in the programs. Therefore, unlike most other sentenced defendants, Mr. Patterson will not get the benefit of early release under FSA or any other programs. In essence, he will only receive the mandatory 15% reduction in his sentence and will not be allowed to spend his custody time in an FPC (Camp) facility while in the BOP.

A defendant with the Criminal History such as Mr. Patterson would normally receive an additional 2 levels reduction per § §4C1.1 - Adjustment for Certain Zero-Point Offenders. But since he fails to meet the requirement of the (A)(5) prong, in that it does not apply to sex offenders, he does not qualify for that reduction.

Mr. Patterson has been in continuous custody since the time of his arrest 28 months ago. This period of incarceration has had a very sobering effect on him. While in custody he has been physically attacked at least once. Nevertheless, he has been without any infractions or disciplinary problems during this very difficult time while in close confinement. Due to the nature of this offense, he will be targeted for future attacks and therefore, placed in segregated custody arrangement by the BOP.

Mr. Patterson wants only to move on with his life, get the treatment he needs and reintegrate back into the community.

**Factor 3: §2G2.2(b)(6) Length of video**

Looking to the footnote on page 31 of the Final Presentence Report, Mr. Patterson did not know the length of the videos when he downloaded them. The consideration of their length at no time caused him to search for or obtain them. It was by sheer coincidence they were the lengths found on his devices.

The Court could consider a variance since at §2G2.2(b)(6) the Sentencing Guidelines provide a two-level enhancement for "the use of a computer or an interactive computer service" in a child pornography offense.

Nearly thirty years ago, Congress directed the Sentencing Commission to issue this enhancement in the Sex Crimes Against Children Prevention Act. Pub. L. No. 104 71, § 3, 109 Stat. 774, 774 (1995). Legislators intended to prevent child pornography from reaching a limitless audience through the internet. H.R. Rep. No. 104-90, at 3–4 (1995). Over time, offenders' increasingly frequent use of computers has extended the enhancement's scope. In 1995, only 28% of child pornography cases involved computers. (U.S. Sent'g Comm'n, Sex Offenses Against Children (1996)), at 30. By 2019, the enhancement applied in more than 95% of cases involving the possession, receipt, or distribution of child pornography. (U.S. Sent'g Comm'n, Federal Sentencing of Child Pornography: Non-Production Offenses (2021) ("2021 Commission Report").

In a report to Congress, the Commission observed that "most of the enhancements in § 2G.2.2 . . . were promulgated when the typical offender obtained child pornography in printed

form in the mail." (U.S. Sent'g Comm'n, Federal Child Pornography Offenses (2012)) According to the Report, by 2012 the enhancement no longer distinguished among offenders because most offenses involved the use of a computer. Id. at 313. The Commission concluded that "most stakeholders in the federal criminal justice system consider the nonproduction child pornography sentencing scheme," including the computer usage and image-number enhancements, "to be seriously outmoded." See id. at iii.

Therefore, the Commission's criticisms of the computer-usage enhancement is not just outmoded but also irrational. The same logic might be that of an enhancement for using a cell phone to make threatening communication instead of a "landline" phone.

In *U.S. v. Dilesh Sharma*, No. 23-616, D.C. No. 2:17-CR-00055, July 15, 2024 the 9th Circuit affirmed the district court's decision that the enhancement did not violate the Due Process Clause. Nevertheless, it did not rule out that Courts could considered a variance in that §2G2.2 is "outmoded" and overstates the Offense Level.

**Factor 4: 18 USC §3585(b) : Defendant has prior custody credits for an offense that is relevant conduct to the instant offense**

Defendant was arrested on May 31, 2023 by the Brentwood Police Department and has been continuously incarcerated to date. He was initially incarcerated in Contra Costa County, as noted on page 22, item 97 of the Presentence Investigation Report. Thereafter, a federal detainer was lodged, and Defendant was transferred into federal custody on May 15, 2024. The state offenses were dismissed but the underlying conduct also forms the basis for the indictment under which Mr. Patterson is now being prosecuted. The state evidence is encompassed by the federal charges.

As such, Mr. Patterson respectfully requests that the Court adjust his sentence downward for the period of detention from May 31, 2023 through May 31, 2024, a total of 350 days actual custody based on the commonality of the evidence and relevant conduct in the state matter.

## **CONCLUSION**

Defendant Mr. Michael Lee Patterson appears before the Court as a first-time offender. Presentence Investigation Report [hereinafter PSR] 22:91-92. He accepted responsibility for his conduct by settling his matter timely. He is ashamed of his choices and the impact they have had upon his family, especially his wife and children. Each day he drowns himself in regret for his past actions, knowing that he will be paying the high price of incarceration and for the loss of his wife and children. He stands before the Court as a broken man.

Mr. Patterson was in a long term marriage, at least 18 years long. Despite the dissolution of his marriage, he remains a dedicated father to his 16 year old son and hopes for reunification after his release from imprisonment. PSR 24:104.

This defendant is facing several more years of incarceration before release. At the time of his arrest, he was not a felon and therefore had the legal privilege of owning a firearm. The revolver found in his car, although he did not have a conceal carry permit, he did have a right to possess it. There does not appear to be a nexus between the gun, and any other actions Mr. Patterson was engaged in on the day of his arrest. He was his habit to carry the revolver under his car seat.

Nevertheless, Mr. Paterson is anxious to move on with his life; to receive the treatment he needs and become a respected member of society. As noted by Dr. Coles, he "believes Mr.

Patterson has a low risk of sexual re-offense" and can be effectively treated in the community once released.

This defendant has made a mess of his life to this juncture and has hurt his family and the community through his involvement in these offenses. Despite this, Mr. Patterson has a sense of optimism. Since his arrest, although painful, he looks forward to the day when he can make amends and be a productive, law abiding member of the community.

Defendant Michael Lee Patterson moves this Court to find his factors in mitigation outweigh the factors in aggravation and sentence him to 87 months incarceration, 5 years of supervised release, waiver of fines, and for designation to a federal prison facility closest to Alameda County. Mr. Patterson respectfully makes his request in the interests of fundamental justice because a sentence of 87 months is sufficient to meet the goals of rehabilitation, provide adequate deterrence, and promote just punishment.

Respectfully submitted,

Dated: September 10, 2025

\_\_\_/s/ Mary Ann F. Bird_____
MARY ANN F. BIRD
Attorney for Defendant