CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JONAH P. ROSS (CABN 305076)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3701
    jonah.ross@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL LEE PATTERSON, <br><br> Defendant. | NO. 4:24-CR-00225 HSG <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Date:   September 17, 2025 <br> Time:   2:00 p.m. <br> Judge:  Hon. Haywood S. Gilliam, Jr. |

# INTRODUCTION

In May of 2023, Defendant Michael Lee Patterson was arrested after attempting to meet what he believed was a 13-year-old girl to perform sexual acts on her. After his arrest, Patterson was found to possess over 600 videos and over 1,200 images containing child sexual abuse material (CSAM) on various electronic devices. Patterson also possessed many firearms and boxes of ammunition, which were scattered all around his home. One of these firearms was an unregistered short-barreled rifle. Patterson has pleaded guilty to one count of Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2) and (b) and one count of Possession of an Unregistered Short-Barreled Rifle in violation of 26 U.S.C. § 5861(d).

For the reasons set forth below, the government request that the Court sentence Patterson to 121 months imprisonment on Counts One and Two, to be served concurrently, to be followed by 10 years of supervised release.

# BACKGROUND

**A. Offense Conduct**

**1. Patterson Arrested After Attempting to Meet a 13-Year-Old Girl to Perform Sexual Acts on Her**

On May 31, 2023, Patterson—using the profile name "Mr. Tabooo—accessed the mobile messaging application Kik to initiate a text chat with another Kik user, whose screen name was "fluffybunny123xoxo." PSR ¶ 10. At the time, Patterson's Kik account had been active for about five years. *Id*. The user "fluffybunny123xoxo" presented as a 13-year-old girl with the name "Chelsea." PSR ¶¶ 10-11. Unbeknownst to Patterson, the person he was communicating with was in fact an undercover deputy from the Contra Costa Sheriff's Office who was part of an undercover operation conducted by the Silicon Valley Internet Crimes Against Children Task Force. PSR ¶ 9. The purpose of the operation was to identify and apprehend adults who participated in sexual conversations with undercover chatters posing as minors online and later attempted to meet in-person with the minors to engage in sexual acts. *Id*.

At the outset of their conversation, "Chelsea" almost immediately confirmed that she was a 13-year-old girl—which "Chelsea" stated multiple times throughout their conversation. PSR ¶ 11.

Patterson lied and stated that he was 23 years old. *Id.* Patterson steered the conversation toward sexual topics, stating that he was going to masturbate, and then asking "Chelsea" if she had had sex with older people. *Id.* Patterson eventually provided "Chelsea" with his cell phone number and asked "Chelsea" to text him. *Id.*

The conversation continued via text message, Patterson repeatedly asked "Chelsea" to send a photograph of herself, and "Chelsea" eventually sent two photographs of what appeared to be a girl of about 13 years of age. PSR ¶ 12. Each time, Patterson responded by commenting on "Chelsea's" attractiveness, writing, "omg you're gorgeous," and, "So pretty. Love your eyes." *Id.* Patterson also sent two photographs of himself, including a photograph of his nude body from the chest to the pubic area, and another of his face. *Id.*

Patterson proposed that the two meet in person. PSR ¶ 13. When asked why he would want to meet, Patterson responded, "To just hang out. Unless you wanted to hook up[.]" *Id.* Asked what he would want to do if they "hook up," Patterson responded, "Totally up to you[.] What were you thinking[?] Id (sic) kiss every inch of you!" *Id.* Patterson became more descriptive, and eventually indicated he wanted to perform oral sex on "Chelsea." *Id.* After "Chelsea" showed interest, Patterson proposed that they meet, stating, "Whenever you're ready to… Want me to come to you[?]" Patterson again confirmed his intention to perform oral sex on "Chelsea." *Id.* After "Chelsea" provided an address where he could pick her up, Patterson stated that she could come to his vehicle with tinted windows and that he would perform oral sex on her in the back. *Id.* Patterson asked "Chelsea" to walk to a nearby gas station. *Id.*

At the gas station, officers located Patterson in the driver's seat of the vehicle he had described to "Chelsea." PSR ¶ 14. In the vehicle, they located two smart phones, including the phone Patterson had used to send text messages to "Chelsea." *Id.* And next to the phone, which was under the driver's seat, officers located a loaded revolver. *Id.*

Patterson was transported to the police station, where he was read his *Miranda* rights, which he acknowledged. PSR ¶ 15. Patterson admitted that he regularly viewed CSAM which he had received through Kik for the entire time he had possessed an account. *Id.*

U.S. SENTENCING MEMO.　　　　　2
Case No. 4:24-cr-225 HSG

**2. Law Enforcement Discovered Illegal Firearms in Patterson's Home**

After his arrest, local officers and federal agents searched Patterson's house in Brentwood, CA. PSR ¶ 16. Patterson's 13-year-old son was present when law enforcement arrived. *Id.* Throughout virtually all parts of the home, the officers located firearms, ammunition, firearm components, and a gun milling machine, used for completing privately made firearms. PSR ¶ 20. Among these firearms were fully automatic machine guns and one short-barreled rifle, which was not registered as required by federal law.

The following photograph depicts some of the firearms seized from Patterson's home:



In the garage, in addition to firearms and firearm components, officers located girls' underwear, a children's bathing suit top, photographs of two young girls, and what appeared to be sex dolls, including one designed to look like an approximately two-year-old girl. PSR ¶ 20.

**3. Agents Search Patterson's Electronic Devices and Discovered over 600 Videos and over 1,200 Images Containing CSAM**

On devices seized from Patterson's home, Special Agents with the United States Secret Service located approximately 663 videos and 1,254 images containing CSAM. PSR ¶ 22. As detailed in the PSR, some of these videos contained deeply disturbing depictions of sexual and violent abuse of

children, including infants. *Id*. And further, while reviewing the contents of one of the phones seized from Patterson's SUV, investigators found 16 pornographic images in which a child's face (the same child in each image) had been superimposed onto the body of a female engaged in sexual acts. PSR ¶ 23. Through further investigation, local law enforcement determined that the child was a member of Patterson's extended family. *Id.* One such image contained an explicit caption in which the female refers to "Mike." *Id.* (Further investigation indicated that Patterson had not harmed this girl.) *Id.*

### B. Procedural History

On April 18, 2024, a federal grand jury returned a two-count indictment charging Patterson with one count of Receipt of Child Pornography (in violation of 18 U.S.C. § 2252(a)(2) and (b)) and one count of Possession of Unregistered Short-Barreled Rifle (in violation of 26 U.S.C. § 5861(d)). PSR ¶ 1.

On May 21, 2025, Patterson pleaded guilty to both counts via a written plea agreement. PSR ¶¶ 2-3. Sentencing is currently scheduled before this Court for September 17, 2025. *Id.*

## DISCUSSION

### A. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include (among other factors):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### B. Sentencing Guidelines Calculation

As set forth in the Plea Agreement, the Sentencing Guidelines calculation for Patterson's offense level is as follows:

| | |
|---|---|
| **COUNT 1: BASE OFFENSE LEVEL** (U.S.S.G. § 2G2.2(a)(1)) | 22 |
| **SPECIFIC OFFENSE CHARACTERISTICS** | |
| **The material involved a prepubescent minor** (U.S.S.G. § 2G2.2(b)(2)) | +2 |
| **The material involved sexual abuse or exploitation of an infant or toddler** (U.S.S.G. § 2G2.2(b)(4)(B)) | +4 |
| **The offense involved 600 or more images** (U.S.S.G. § 2G2.2(b)(7)(D)) | +5 |
| **Acceptance of responsibility** (U.S.S.G. § 3E1.1) | -3 |
| **Adjusted Offense Level** | 30 |
| **Total Adjusted Offense Level** | **30** |
| | |
| **COUNT 2: BASE OFFENSE LEVEL** (U.S.S.G. § 2K2.1(a)(5)) | 18 |
| **SPECIFIC OFFENSE CHARACTERISTICS** | |
| **Offense Involved 3-7 Firearms** | +2 |
| **Acceptance of responsibility** (U.S.S.G. § 3E1.1) | -3 |
| **Adjusted Offense Level** | 17 |
| **TOTAL ADJUSTED OFFENSE LEVEL** (U.S.S.G. § 3D1.4(c))**:** | 30 |
| **Criminal History Category** | I |
| **Guidelines Range** | **97 – 121 months** |

The Government agrees with the PSR that Patterson's Criminal History Category is I. The PSR's Guidelines calculation also included a 2-point increase for an offense involving use of a computer (U.S.S.G. § 2G2.1(b)(6)(B)), leading to a Total Adjusted Offense level of 32 and a Guidelines Range of

U.S. SENTENCING MEMO.  5
Case No. 4:24-cr-225 HSG

121-150 months. PSR ¶ 3 and Sentencing Recommendation. The Government agrees that this increase is supported by the facts of the case; however, the government does not include that increase above to honor the parties' plea agreement.

### C. The Government Recommends 121 Months of Imprisonment Based on the 18 U.S.C. § 3553(a) Factors

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a **custodial sentence of 121 months** (to be served concurrently on Counts One and Two) to be followed by a 10-year term of supervised release (10 years on Count One and three years on Count Two, served concurrently). Consistent with 18 U.S.C. § 3553(a), such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offenses, to provide just punishment and protect the community, and to account for both the significant aggravating and mitigating factors present in this case.

Patterson's crimes are heinous, and they merit a lengthy custodial sentence. Over several years, Patterson received hundreds of videos and over 1,000 images containing CSAM, many of which included sexual and violent abuse of inconceivable brutality against minor children, toddlers, and infants. The victim impact statements included in the PSR demonstrate why receipt and possession of CSAM is so devastating to victims. PSR ¶¶ 24-61. The knowledge that this material is distributed and downloaded on websites such as Kik causes victims of child sexual abuse to live with the constant fear that they will be recognized in public by people who have seen these videos and images. And although Patterson did not personally produce CSAM, participating in the market for CSAM further contributes to the sexual exploitation of children. Consistent with 18 U.S.C. § 3553(a)(3), a considerable custodial sentence is necessary to afford adequate deterrence both specifically to Patterson and generally to those who also contribute to the sexual exploitation of children.

Consistent with these victims' statements, the Supreme Court has acknowledged that child pornography "produces concrete and devastating harms for real, identifiable victims." *Paroline v. United States*, 572 U.S. 434, 457–58 (2014). Furthermore, as Congress has recognized, "child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." *United States v.*

*Marigny*, No. 20-MJ-70755-MAG-BLF, 2020 WL 4260622, at *3 (N.D. Cal. July 24, 2020) (citing Child Pornography Prevention Act of 1996, Pub. L. No. 104-208 § 121, 110 Stat. at 3009, 3009-27 (1996)).  Indeed, "[i]t is common ground that the victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured." *Paroline*, 572 U.S. at 457.  Defendants who possess child pornography "play[ ] a part in sustaining and aggravating this tragedy." *Id.*  For many victims, given that "child pornography is now traded with ease on the Internet," knowledge of wide circulation "renew[s] the victim's trauma and ma[kes] it difficult for her to recover from her abuse." *Id.* at 439–41.  "In a sense, every viewing of child pornography is a repetition of the victim's abuse." *Id.* at 457.  Whether he intentionally caused this harm or not, Patterson's possession of CSAM proliferated the abuse of many victims in this case, as detailed in their victim impact statements and summarized by Probation in the PSR.  *See* PSR Sentencing Recommendation.

But Patterson's heinous conduct did not end with merely receiving CSAM.  Apparently unsatisfied by viewing this material, Patterson acted on his urges by attempting to meet a 13-year-old girl to perform sexual acts on her.  And further, he apparently became sexually fixated on a minor child in his own extended family.  Although Patterson did not face federal criminal charges for this conduct, they are relevant circumstances of the offense and demonstrate the nature of the defendant.  They are aggravating factors and weigh in favor of a considerable custodial sentence.

Nor was Patterson's lawlessness was not limited to his receipt of child pornography or his attempts to perform sexual acts on a minor.  Patterson also possessed an arsenal of weapons in his own home, some of which were illegal under federal firearms laws.  He made little effort to secure these firearms and ammunition; instead, they were found all over his residence, which he shared with his 13-year-old son, who was found alone when officers arrived to search Patterson's home.

The PSR also sets forth at least one mitigating factor, which the government acknowledges and has accounted for in its sentencing recommendation.  Patterson reported sexual abuse inflicted on him by a neighbor couple and by a family friend's daughter when Patterson was between the ages of seven and eleven years old.  PSR ¶ 63.  The government acknowledges the likelihood that this abuse contributed to his sexual fixation on minors.

A custodial sentence of 121 months—which represents the high end of the guidelines range as agreed upon in the parties' Plea Agreement—is sufficient, but not greater than necessary, taking into account the factors set forth in 18 U.S.C. § 3553(a). As described above, Patterson's crimes were despicable and serious, and they merit a lengthy sentence. A sentence of 121 months would also serve the general and specific deterrence goals of § 3553 by signaling to potential offenders that the receipt and possession of CSAM will not be tolerated, nor will the illegal possession of firearms. And such a sentence would signal to survivors of such exploitation that the criminal justice system takes their concerns about the continued distribution of explicit material depicting their abuse seriously.

## CONCLUSION

For the foregoing reasons, with full consideration of the Sentencing Guidelines, the goals of sentencing, and the factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court sentence Defendant Michael Lee Patterson to a sentence of **121 months of imprisonment** on Counts One and Two, to be served concurrently, to be followed by 10 years of supervised release (with the conditions recommended by the U.S. Probation Office), a $200 special assessment, an additional special assessment of $5,000 under 18 U.S.C. § 3014, and an additional assessment for an offense for trafficking in child pornography of up to $35,000 under 18 U.S.C. § 2259A(a)(2), forfeiture as detailed in the plea agreement, and restitution.

DATED: September 10, 2025

/s/ *Jonah P. Ross*
JONAH P. ROSS
Assistant United States Attorney